CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 1 5 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JESSIE L. BARLEY | ) |
| Plaintiff, | ) Case No. 4:04CV00037 |
| v. | ) **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) By: Jackson L. Kiser |
| Defendant. | ) Senior United States District Judge |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending reversing the Commissioner's final decision denying the Plaintiff's claim for benefits. The Defendant filed objections to the Report and Recommendation. I reviewed Judge Crigler's Report and Recommendation, the Defendant's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I disagree with Judge Crigler's findings but **REMAND** the case for further proceedings.

## STATEMENT OF FACTS

Plaintiff Jessie L. Barley ("Plaintiff") is 38 years old and has a limited education. Her past work experiences includes employment as a certified nursing assistant. She alleges that she became disabled on January 4, 2002, due to a back disorder. In February 2002, Plaintiff was diagnosed with lumbosacral radiculopathy by her treating physician, Dr. Lawrence F. Cohen ("Dr. Cohen"). An epidural steroid injection and epidurogram procedure was performed, but Plaintiff continued to experience pain.

1

In April 2002, an x-ray showed that Plaintiff suffered from severe spinal stenosis, and she underwent a bilateral laminectomy L45 and L5-S1, with fusion. That same month, the State Agency Medical Consultant completed a residual physical functional capacity assessment and determined that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, and that Plaintiff should avoid tasks requiring more than occasional climbing, balancing, stooping, kneeling, crouching and crawling.

In May 2002, Plaintiff reported to Dr. Cohen that she continued to experience pain in her right leg, but denied back pain, weakness, numbness, or paresthesia. In September 2002, Plaintiff went to Dr. Michael H. Torres for a medication refill and complaints of numbness of her lower extremities. Upon examination, no abnormalites were discovered. However, in November 2002, Dr. Torres indicated that Plaintiff's lower extremities were without edema and that all motor units were 5/5 bilaterally and sensory deficits were negative. Plaintiff was prescribed medications for high blood pressure.

In April 2003, Dr. Cohen completed another residual physical function capacity assessment, and reported that Plaintiff retained the residual functional capacity to lift and/or carry 20 pounds occasionally, stand and/or walk about 2 hours in an 8-hour workday, and should be allowed a sit/stand option. In May 2003, Dr. Cohen completed another assessment and determined that Plaintiff could lift and/or carry less than 10 pounds occasionally, stand and/or walk 30 minutes at a time (but less than 2 hours in an 8-hour workday), sit 15 minutes at a time, and should be allowed a sit/stand option. Dr. Cohen also noted that Plaintiff's pain would interfere with her ability to pay attention and concentrate and that her physical problems could cause absenteeism one to two days per month.

In August 2003, a posterior and anterior lumbar fusion procedure was performed on the Plaintiff, and she was released in stable condition afterward. In September 2003, Plaintiff saw Dr. Cohen, reported she was doing excellent, and was recommended physical therapy. In November 2003, Dr. Cohen reported that claimant retained the residual functional capacity to lift and carry 15-20 pounds, and further indicated that she should avoid activities that required climbing, stooping, crouching, kneeling and crawling. In December 2003, Dr. Cohen also reported that she could stand/walk 2-4 hours a day continuously.

## **PROCEDURAL BACKGROUND**

On January 23, 2002, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. The Plaintiff appeared and testified at a hearing held on November 26, 2003 in Danville, Virginia. Jean Hambrick, an independent vocational expert ("VE"), also appeared and testified. On March 25, 2004, an Administrative Law Judge ("ALJ") denied her claim for a period of disability, concluding that Plaintiff retained the capacity for work that exists in significant numbers in the national economy and is not under a "disability" as defined in the Social Security Act. The Plaintiff filed an appeal to this Court, and the Honorable B. Waugh Crigler, United States Magistrate Judge, filed a report recommending reversal of the Commissioner's decision and remand to the Commissioner for the sole purpose of calculating benefits.

## ANALYSIS

### I. Standard of Review

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

### II. The Social Security Act

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate his residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burden of proof remains with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d

4

31, 35 (4th Cir. 1992).

### III. Discussion

In his Report and Recommendation, Judge Crigler concluded that the ALJ committed clear and reversible error because the Commissioner failed to discharge her burden in the sequential process to demonstrate that alternate gainful activity was available to the Plaintiff. Under the five-step process, inquiry must stop at any point when the claimant is found disabled or not disabled. 20 C.F.R. § 404.920(a). A vocational expert ("VE") may be utilized in evaluating the fourth step - whether the impairment prevents the claimant from performing her past relevant work. 20 C.F.R. § 404.960(b)(2). At the November 26, 2003 hearing, the ALJ posed to the VE the question of whether "any unskilled work" existed for an individual with the following hypothetical limitations:

> "The limitation would be lifting and carrying less than ten pounds occasionally and walking 30 minutes at a time, less than two hours total per day. Sitting 15 minutes at a time. She needs to have the ability to walk every 15 minutes to relieve the pain. Medication she takes causes her to be drowsy, which means she should avoid jobs that require the ability to maintain attention and concentration for a-to maintain that. And she would probably be absent from work at least-at least once or twice a month, perhaps more."

The VE testified that, assuming these hypothetical limitations, he did not believe that there would be "any significant jobs" available for the Plaintiff. (R. 273). It was only in response to supplemental interrogatory #10 (adding the hypothetical ability to stand and walk 2-4 hours per day continuously), that the VE concluded that Plaintiff was capable of making a vocational adjustment to other work including work as a companion/sitter, a cashier, and as a bench worker. Based on this testimony, the ALJ found that the Plainiff was "not disabled" within the framework of Medical-Vocational Rule 201.25. The Magistrate determined that this finding was the product of an "improper question" by the ALJ to the VE, and that "it fails to contextualize the vocational evidence, particularly in light

5

that Plaintiff was able to perform less than a full range of sedentary work." The Magistrate also points to the supplemental interrogatory asking if Plaintiff had any transferable skills, to which the VE responds "NOT SED," which the Magistrate claims is contradictory to the ALJ's ultimate finding that the Plaintiff was "not disabled."

As an initial matter, I find nothing improper about the question posed to the VE by the ALJ at the hearing. "In order for a vocational expert's opinion to be relevant or helpful . . . it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) *citing Stephens v. Secretary of Health, Education and Welfare*, 603 F.2d 36 (8th Cir. 1979). The hypothetical limitations posed to the VE at the November 26, 2004 hearing fairly reflect the Plaintiff's impairments as indicated in the assessments offered by Dr. Cohen, Plaintiff's treating physician. Furthermore, the ALJ's question to the VE of whether any unskilled work existed for a person with these hypothetical limitations was proper under *Walker* as it "assist[ed] the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. As for the supplemental interrogatories, my primary concern is that it appears that no opportunity was given to cross-examine the VE on her responses. Because it appears that the ALJ ultimately based his findings on the VE's responses to these interrogatories, I find it problematic that no cross-examination was conducted. Therefore, upon remand, I recommend that a supplemental hearing be held to allow the VE to testify and be cross-examined on the issues addressed by the supplemental interrogatories.

## CONCLUSION

For reasons stated herein, I disagree with Judge Crigler's rationale but will **REMAND** the case for further proceedings.

Entered this 15th day of April, 2005.

Jackson L. Kiser
Senior United States District Judge